**MALONEY, Collector of Internal Revenue, v. HAMMOND.**

No. 12073.

United States Court of Appeals Ninth Circuit.

Sept. 7, 1949.

Rehearing Denied Oct. 27, 1949.

See, also, 9 Cir., 171 F.2d 225.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Edward J. P. Zimmerman and Helen Goodner, Sp. Assts. to the Atty. Gen., Henry L. Hess, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellant.

Robert T. Jacob and S. J. Bischoff, Portland, Or., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This is an action for refund of taxes. On July 27, 1945, the Commissioner assessed against the appellee a deficiency in income taxes for the taxable year 1943, involving the consolidated return for the tax years 1942 and 1943, in the sum of $157,146.90. At the same time a credit of $6,554.03 was allowed as overpayment of income taxes for 1941. Appellee paid the difference of $150,-592.88 to appellant, the Collector, and subsequently commenced this action.

The income in question was derived from public works contracts entered into with government agencies for the construction of buildings and other public works. The contracts contained provisions for monthly payments on estimates of the value of the work completed during the month, to be approved by a party designated in the contract for that purpose. Retention of fixed percentages of the amounts determined by the estimates was provided for in the contracts as security for appellee's performance.

The method employed in arriving at the monthly estimates was as follows: The superintendent in charge of a particular job would figure the amount the appellee was entitled to receive. The figures were then submitted to the engineer or architect in charge. When agreement was reached a formal statement was prepared and submitted to the proper authority who in turn issued a certificate. Appellee's bookkeepers then prepared an invoice for the total amount found to be due appellee, and the invoice, together with such supporting data as were necessary, was tendered for payment. When the invoice was submitted, 100% of the amount found to be due was accrued as income, without deduction for the retained percentages. All expense was accrued at the time the obligation to pay became fixed.

The books of account were kept on the accrual basis and income tax returns were made from the books so kept.

■■■ The first disagreement between the parties hereto relates to the method of accounting employed. Appellee maintains he was authorized by the Commissioner to use the accrual method. Appellant contends that appellee was given permission to use the percentage-of-completion method and not the straight accrual method. On this question the trial court found in favor of appellee. In such a situation we have the duty of sustaining the finding of the trial court unless it is clearly erroneous. We have examined the evidence upon which the trial court acted and are of the opinion that the court could not have logically reached a contrary conclusion. The evidence is in the form of correspondence. Our reading of these writings convinces us that permission to use the accrual method of accounting was granted by the Commissioner in positive and explicit terms, without any qualification with respect to the method of reporting income from long-term contracts.

Appellant argues that even assuming the appellee had permission and the right to use the accrual system and did use it, the method employed did not clearly reflect ap-pellee's income, and, as a result, the Commissioner was authorized by § 41 of the Internal Revenue Code, 26 U.S.C.A. § 41, to adopt his own determination as to the accounting method to be followed for the taxable years involved. If appellant's position is that, having granted permission to a taxpayer to use a certain method of accounting and the taxpayer having in good faith followed the allowed method, the Commissioner may subsequently determine that some other method would be more advantageous to the government in the amount of taxes to be collected and substitute the second method for the first, we say the Commissioner has no such right. To do so would be most unfair to the taxpayer. However, it may be more accurate to state appellant's position as contending that the accounting method used by appellee was not in accordance with the ordinary and generally accepted accrual methods of accounting. This was the conclusion reached by the revenue agent on whose report the original deficiency assessment was based. He, the agent, felt there was a distortion of income present over the years 1941, 1942 and 1943, but he was of the opinion that to recompute the income in accordance with a true accrual basis would entail a prohibitive amount of time. Consequently, he devised a method of computation which he concluded would fairly reflect the income of the years under consideration. In his computation he took the ratio of the total net profit received to the total gross receipts on each contract and applied that ratio to the yearly gross receipts to get the net income from that contract for each year. Appellant admits that this method is not provided for by the regulations or the Internal Revenue Code and attempts to justify the action on the ground that the Commissioner has broad discretion in making a recomputation clearly to reflect income without being limited by "stereotyped" methods of accounting, citing, William Hardy, Inc., v. Commissioner, 2 Cir., 82 F.2d 249; In re Newman, 6 Cir., 94 F.2d 108; Carver v. Commissioner, 6 Cir., 173 F.2d 29.

■■ In this situation the Collector has not shown that the appellee's accrual meth-

od of accounting, which the appellee had been given specific authority to use, was used incorrectly. The trial court found that the methods used by appellee were correct and truly reflected his income on the accrual basis. There is no claim or suggestion that appellee made incorrect or false entries or that the accounts were not fairly and honestly kept and maintained. The book entries and figures furnished by appellee were accepted without change by the Revenue Agent in making his recomputation.

■ The 1938, 1939, 1940 and 1941 returns made by appellee were made on the accrual basis and were each audited twice. The Commissioner's failure to challenge appellee's right to use the accrual method of accounting at the time those returns were audited is a circumstance which may be considered in determining the validity of the Commissioner's subsequent determination. Cf., S. Rossin & Sons v. Commissioner, 2 Cir., 113 F.2d 652; Fowler Bros. & Cox v. Commissioner, 6 Cir., 138 F.2d 774; Gus Blass Co., 9 T.C. 15, 33–36.

■ Appellant complains that the trial court erred in denying his motion to amend his answer and plead as a set-off against appellee's claim for a refund of overpaid taxes that he, appellee, failed to report as taxable income for the period involved an additional amount of income on which the Commissioner had not theretofore assessed a deficiency. The record in respect to this claimed error is incomplete and very confusing. No copy of the tendered amendment, if one was tendered, appears in the record. We find a motion of appellant "for an order authorizing said defendant [appellant] to file his amended answer herein and to make the United States a party hereto."

There is the supporting affidavit of Thomas R. Winter of counsel for appellant, which details certain alleged facts relating to the alleged failure of appellee to pay the entire taxes due and then concludes with the statement that "the United States, in this action, is entitled therefore, to appear and affirmatively pray for an affirmative judgment against the plaintiff in the sum of $6,554.03, with interest from November 21, 1945, and costs, as will more fully appear in the defendant's [appellant's] amended answer and counter-claim of the United States of America; that the United States is a necessary party to this action in order that the Court may fully determine the issues involved, and the appearance of the United States in this action will avoid a multiplicity of suits." The United States filed a petition for leave to intervene. The Court denied the petition. The United States has not appealed. We think the Winter affidavit does no more than support the petition of the United States for intervention. It recognizes the necessity of the United States as a party in order to assert the so-called counterclaim. It refers to appellee's proposed amended answer but we are left entirely in the dark as to the contents thereof, which places the motion to amend entirely upon the mere request for leave to amend, and that is not sufficient to justify us in holding that the trial court abused its discretion in denying such permission. If it be said that the Winter affidavit sufficiently sets out the nature of the claim sought to be included in the amendment, it may also be said that said affidavit further discloses the belief of the affiant that the United States is the proper party to assert the alleged counter-claim and the United States is not here complaining.

Judgment affirmed.