**FRUEHAUF CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16335.**

United States Court of Appeals
Sixth Circuit.

March 10, 1966.

Raymond C. Cushwa, Washington, D. C. (Alfons Landa, George D. Webster, Washington, D. C., on the brief; Davies, Richberg, Tydings, Landa & Duff, Washington, D. C., of counsel), for petitioner.

Richard J. Heiman, Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PHILLIPS, Circuit Judge, CECIL, Senior Circuit Judge, and KENT, District Judge.

CECIL, Senior Circuit Judge.

The sole question presented on this petition for review of a decision of the Tax Court is whether an order of the Commissioner, changing the petitioner's method of inventorying used trailers, made in 1959, can be retroactive to the petitioner's tax years 1954, 1955 and 1956. The Tax Court decided the issue adversely to the petitioner.

The facts are fully stated in the Findings of Facts and Opinion of the Tax Court. 42 T.C. 83. The pertinent facts are not in dispute. We restate here only such facts as demonstrate the question involved. The petitioner, Fruehauf Trailer Company, began acquiring used trailers about the year 1926. These used trailers were inventoried by the petitioner at one dollar per unit. This practice was not questioned by the Commissioner for the years prior to 1942. The Internal Revenue Service had examined and audited the petitioner's federal income tax returns for the years prior to 1942, and had made no change with respect to the method of inventorying used trailers. The method was questioned in the examination of the 1939 return but nothing was done about it.

On April 28, 1948, the petitioner received the revenue agent's report of March 15, 1948, for the four years 1942 through 1945. In this report the agent proposed to adjust the used-trailer inventory at December 31, 1945, from one dollar per unit to the lower of cost or market. The petitioner protested this change. It was argued on behalf of the petitioner that the one dollar per unit should be continued, but that if the change was made for December 31, 1945, similar adjustments should be made for the opening and closing inventories for the four years 1942 through 1945. At a conference at the Detroit office of the In-

ternal Revenue agent, in September 1948, a tentative agreement was made to revise the inventories for the four years in question, on the lower of cost or market method.

The petitioner executed a Form 874 on November 9, 1948, agreeing to the deficiency for the four years in question. On February 11, 1949, petitioner was notified by the Detroit office that the case would be disposed of in accordance with the agreement evidenced by Form 874. The petitioner paid the assessment on June 8, 1949. The Commissioner never certified the over-assessments as set forth on Form 874.

As of January 1, 1949, partly because petitioner thought the inventory issue was settled, in accordance with Form 874, and partly in the interest of more accurate reporting of annual earnings, petitioner changed, on its books, its method of inventorying used trailers to the lower of cost or market.

It was necessary that the agreement of November 9, 1948, as evidenced by Form 874, be approved by the national office of the Internal Revenue Service. On March 7, 1950, the office of the Chief Counsel returned to the Income Tax Unit in Washington the administrative file for the years 1940 through 1945, for reconsideration of the proposed revision of the used-trailer inventory. The 1940 and 1941 years came under consideration by reason of an allowance of petitioner's claims in part by the Excess Profits Tax Council. It was stated in the memorandum of the Chief Counsel's office, that,

"While taxpayer's method of computing inventories of used trailers is obviously erroneous, it is the opinion of this office that a correction should not be made in this case in a manner that will result in the substantial benefit to the taxpayers as now proposed. * * * Unless a settlement on a more equitable basis can be reached or the correction made starting in a year where the opening inventory is small and the double benefit would not be so great (as, for instance, the year 1944), it is the

opinion of this office that the Government should refuse to permit a change in the erroneous method of inventorying used trailers used by the taxpayer."

Negotiations between representatives of the petitioner and representatives of the Detroit office and the national office of Internal Revenue Service failed to reach any agreement for the settlement of the inventory issue.

On June 20, 1950, the Deputy Commissioner of Internal Revenue addressed a letter to the internal revenue agent in charge in Detroit which stated in part:

"The taxpayer's representatives have not made an acceptable offer whereby the double deduction created by the opening inventory for 1942, could be compensated on an equitable basis, but have indicated that recomputation of the inventories on the dollar value basis, heretofore consistently followed by the taxpayer, would be satisfactory."

Following this, on June 23, 1950, the chief conferee of the Detroit office advised a representative of the petitioner that it had been decided to accept petitioner's used-trailer inventory of one dollar per unit. It was then agreed that recomputations would be made for the years 1940 through 1945 on the basis of one dollar per unit inventory. A revised Form 874 was executed to this effect on July 5, 1950, and on July 7, 1950, the petitioner was advised through the Detroit office that the case would be disposed of in accordance with the recomputation. On November 15, 1950, petitioner received a refund of $1,503,230.81 in federal income and excess profits taxes (including interest) for the years 1940 through 1945, in accordance with the recomputations agreed to in Form 874 dated July 5, 1950. This restored the petitioner to the dollar per unit method of inventory.

In the meantime, after the tentative agreement of September 10, 1948, but before June 20, 1950, petitioner filed a claim for refund for 1946, an amended return for 1947, and an original return for 1948, all based on the inventorying of

used trailers at the lower of cost or market. The Commissioner rejected the claim for refund on the 1946 return on January 28, 1953. He rejected the amended return for 1947, and the 1948 return was recomputed on the basis of inventorying used trailers at one dollar per unit. This action was taken in accordance with the agreement reflected in Form 874, dated July 5, 1950. In 1949 and thereafter, the petitioner filed its returns with its inventory of used trailers at one dollar per unit. The petitioner's returns for the years 1949 through 1953 were examined by a revenue agent and, while the one dollar per unit practice was questioned, it was not disturbed.

"On March 31, 1959, the revenue agent informed petitioner that the national office of the Internal Revenue Service had decided that it could no longer go along with petitioner's practice of inventorying its used trailers and that, beginning with the trailers acquired during 1954 the inventory would have to be computed on the lower of cost or market basis. Thereafter, on April 28, 1960, and August 29, 1960, the deficiency notices which form the basis for this proceeding were issued." Findings of Fact, Tax Court. 42 T.C. 83, 94.

In this Court it is conceded that the Commissioner could make the change prospectively, in the method of reporting the petitioner's inventory of used trailers. It is argued that the change cannot be made retroactive to the years 1954, 1955 and 1956.

The petitioner, on the issue now before us, argued in the Tax Court that it was an abuse of discretion on the part of the Commissioner to apply the order of March 1959, changing the method of inventory, retroactively. The Tax Court decided against the petitioner on the question of abuse of discretion. It found that "Respondent was not precluded in 1959 from making the change beginning with the then open years 1954, 1955 and 1956." The claim of abuse of discretion is abandoned and is not presented to our Court on this review.

It is now claimed that the decision of the Commissioner, in 1950, to continue the petitioner's one dollar per unit method of inventorying used trailers, had the force of legislation and could not be applied retroactively. In support of this claim, it is argued that the Commissioner is given a broad discretion under Section 446(a) and (b), Title 26, U.S.C., to make a computation of income which, in his opinion, clearly reflects income, that his exercise of that discretion in 1950 was legislative in nature and that the Commissioner could not subsequently retroactively reverse legislative action.

We cannot accept the theory that the Commissioner's decision in 1950 to permit the petitioner to continue a method of inventorying used trailers which was obviously erroneous was legislative in character.

As said by the Supreme Court in Dixon v. United States, 381 U.S. 68, 72, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223:

"In Automobile Club of Michigan v. Commissioner of Internal Revenue, supra, 353 U.S. at 183–184 [77 S.Ct. 707 at 709, 1 L.Ed.2d 746] we held that the Commissioner is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions. He may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake. See Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129 [56 S.Ct. 397, 80 L.Ed. 528]. This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due."

The principal authority cited in support of petitioner's theory is Arizona Grocery

Co. v. Atchison, T. & S. F. Ry., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. In this case there was an order of the Interstate Commerce Commission fixing freight rates in accordance with the statute [1] giving it the power to fix rates. It was a general order affecting all railroads operating between the points involved. Later, after the Commission found that the rate was unreasonable, it fixed a new lower rate and made it retroactive. The Court held that the Commission could make the new rate applicable to the future but could not make it retroactive. This is not analogous to the case before us.

It is not necessary in this opinion to engage in a discussion of so-called "legislative rules" and "interpretative rules" or the distinction between these terms. As to this distinction, Professor Davis in his Administrative Law Treatise, Vol. 1, § 5.03, p. 298 (1958), says:

"Yet we have the benefit of only occasional judicial explanation of the distinction, and the Supreme Court apparently has never provided a full-bodied discussion of it. Indeed, the term 'legislative rule' or 'legislative regulation' apparently does not appear in any Supreme Court opinion."

In the case before us we have a decision of the Commissioner affecting the inventory of one individual company. The decision does not involve a change in the law nor any change in the regulations. The Commissioner has simply interpreted existing law by correcting an erroneous method in the taxpayer's practice of inventorying used trailers.

In this connection the Tax Court said:

"It was a mistake of law for the respondent to permit petitioner to continue to inventory its used trailers at $1 each after about 1942 when both petitioner and respondent were satisfied that it was obviously erroneous to pursue such a practice, because such practice was contrary to

the respondent's regulations. See Regulations 111, section 29.22(c)–2, and Regulations 118, section 39.22 (c)–2, both of which provide that 'Taking * * * the inventory, at a nominal price or at less than its proper value' was not in accord with the regulations. See also Dobson v. Commissioner, 320 U.S. 489 [64 S.Ct. 239, 88 L.Ed. 248], wherein the Supreme Court has held it to be 'a clearcut question of law' where 'applicable statutes and regulations properly interpreted forbid' a method of calculation, such as the taking of inventories in the instant case at the nominal price of $1 per unit "

Counsel for the petitioner have based their claim for reversal of the decision of the Tax Court squarely on the theory that the 1950 decision of the Commissioner was legislative in character and that it cannot be reversed retroactively. Not one authority, analogous to the case at bar, has been cited to us, nor have we found any that supports this theory. Cases,[2] other than those decided on the legislative theory, are cited where the Commissioner was not permitted to change a former ruling or to apply it retroactively but those cases were decided on the particular facts of each case.

Throughout the argument of counsel for the Commissioner the tax years in question, 1954–1956, are referred to as open years, that is, assessment for those years is not barred by the statute of limitations. No explanation is given as to what statute is involved or how it is applicable to the facts of this case. We presume the statute is Section 6501(e) (1) (A), Title 26, U.S.C. Neither the petitioner nor the Tax Court raise any question about the years under consideration being barred by the statute of limitations, so we treat them as open years as claimed by the Commissioner.

Since the only claim of the petitioner, based on the legislative theory fails, we

1. Sec. 418–421, 41 Stat. 484–488.

2. Maloney v. Hammond, 176 F.2d 780, C.A. 9; H. S. D. Co. v. Kavanagh, 191 F.2d 831, C.A.6; Woodworth v. Kales, 26 F.2d 178, C.A.6.

must conclude that the finding and decision of the Tax Court is correct. The Tax Court found that "Respondent was not precluded from making the change beginning with the open years 1954, 1955 and 1956," and that he was not estopped from doing so by his prior actions.

The Internal Revenue Code of 1954 provides that "The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." 26 U.S.C. § 7805(b). The Tax Court held that the Commissioner did not abuse his discretion in his retroactive ruling in the present case.

Finding no error of law in the decision of the Tax Court, it is affirmed.