PIERCE DITCHING COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

TRI-CITY PAVING & CONSTRUCTION COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10838–77, 10842–77.    Filed November 21, 1979.

*Richard P. Buskell,* for the petitioners.
*Thomas J. O'Rourke* and *Carolyn M. Parr,* for the respondent.

OPINION

STERRETT, *Judge:* Respondent, on July 27, 1977, issued statutory notices in which he determined a deficiency in Federal income tax for taxable year 1974 in the amount of $22,923.22 against

Pierce Ditching Co., Inc. (hereinafter Pierce Ditching or petitioner), and $12,001.51 against Tri-City Paving & Construction Co., Inc. (hereinafter Tri-City). Subsequently, Tri-City agreed to respondent's claimed deficiency. After other stipulations, the sole issue remaining for our decision is whether certain salaries, incurred by Pierce Ditching in 1974 and paid in 1975, were deducted properly as expenses on the 1974 income tax return of Pierce Ditching.

The cases before us were consolidated for purposes of trial, briefing, and opinion and were submitted under Rule 122, Tax Court Rules of Practice and Procedure. Hence, all of the facts have been stipulated and are so found. Since Tri-City accepted respondent's finding of a deficiency, our findings will be limited to Pierce Ditching.

At the time of filing its petition herein, petitioner's principal place of business was located in Kingsport, Tenn. Pierce Ditching timely filed its corporate income tax return for the calendar year 1974 with the Director, Memphis Service Center, Internal Revenue Service, Memphis, Tenn. It is engaged in the contracting business and principally constructs sewer and water systems for governmental authorities and utility districts.

Since its incorporation in 1957, Pierce Ditching has consistently recognized construction income in the year that cash, or its equivalent, is received, and has taken deductions for direct construction expenses and general overhead expenses in the year paid, with one exception. The exception relates to the fact that petitioner's board of directors has, since incorporation, met in December of each year to review the results of operations and to determine and fix officers', administrative, and clerical salaries and bonuses for that year, and petitioner has taken a deduction for them in the year that the obligation to pay said salaries and bonuses first arises notwithstanding the payment of said salaries and bonuses during the subsequent year. Respondent's agent examined petitioner's income tax return for 1974 and determined that it was not entitled to take a deduction for salaries and wages accrued, but not paid, at the end of that year.

The following tabulation reflects accrued, but unpaid, salaries and wages of Pierce Ditching at the end of each indicated year by employee classifications:

| Year | Chief executive officers | Other officers, administrative and clerical employees |
|------|------|------|
| 1969 | $54,000 | $24,100.00 |
| 1970 | 20,000 | 18,000.00 |
| 1971 | 0 | 0 |
| 1972 | 0 | 18,962.50 |
| 1973 | 10,000 | 17,000.00 |
| 1974 | 70,000 | 23,000.00 |
| 1975 | 80,000 | 21,000.00 |

The following tabulation reflects the salaries of the chief executive officers of Pierce Ditching fixed by the board of directors for each indicated year and claimed as a deduction on petitioner's income tax returns. In each year, the amount claimed included the accrued but unpaid salaries at the end of the year.

| Year | Amount | Year | Amount |
|------|------|------|------|
| 1969 | $75,860 | 1973 | $25,900 |
| 1970 | 37,200 | 1974 | 85,900 |
| 1971 | 17,800 | 1975 | 80,000 |
| 1972 | 15,900 | | |

The accrued wages for 1974 were paid in March 1975. There is no issue with regard to payment in the ensuing 2½ months or with respect to the reasonableness of the amounts.

Robert M. Slaughter and John Mack Pierce are the chief executive officers of petitioner and each has owned 50 percent of Pierce Ditching's stock continuously since incorporation.

Respondent's agent examined Pierce Ditching's income tax returns for 1967, 1968, and 1969 and, in an examination report dated August 6, 1971, respondent proposed to change petitioner's method of accounting to the accrual method for all items of income and expense. Upon subsequent administrative review of the examining agent's report, respondent accepted the methods of accounting utilized by petitioner in reporting its income and expenses (including salaries and wages) on its income tax returns for 1967, 1968, and 1969. The stipulated facts do not include either the precise language of the August 6, 1971, report or that of the findings upon administrative review. Respondent's agent again examined Pierce Ditching's income tax returns for 1971 and 1972, and no adjustment was proposed that would

change any method of accounting employed by petitioner for those years.

The statutory notice page entitled "Explanation of Items" stated respondent's basis for denial of the accrual wages as follows: "You use the cash receipt and disbursement method in filing your return."

The question presented to this Court is one of permissible accounting method. Section 446(a), I.R.C. 1954, states that "taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." The general rule of section 446(a) applies unless the method used does not clearly reflect income or no method of accounting has been regularly used by the taxpayer. Section 446(b). Subject to the rules of section 446(a) and (b), the four permissible methods of accounting are:

(1) the cash receipts and disbursements method;
(2) an accrual method;
(3) any method permitted by chapter one of the Code;
(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary

Respondent argues that, as petitioner is on the cash method of accounting, the deduction of accrued salaries and bonuses is not permitted until paid. Respondent further argues that the previous actions of respondent's agents are neither relevant to this case nor binding on respondent.

Petitioner argues that it has consistently applied a "hybrid method" of accounting to compute and report its annual items of income and expenses. It further argues that as this method of accounting was previously approved by respondent, it is a permissible method under the governing income tax regulations. In addition, petitioner argues that respondent's authority to order a change in accounting method, where petitioner has regularly employed a consistent method previously approved by respondent, requires a finding that the utilization of this method does not clearly reflect the income of the petitioner.

Petitioner concedes that, absent the prior examination and approval of petitioner's method of accounting, this case would be controlled by *Connors, Inc. v. Commissioner*, 71 T.C. 913 (1979). In *Connors*, this Court held that section 446(c)(4) and section 1.446–1(c)(1)(iv)(*a*), Income Tax Regs., require a taxpayer, who

uses the cash method of accounting for reporting items of gross income for his trade or business, to use also the cash method for reporting items of expenses even though he uses a hybrid method of accounting with respect to other items.

Petitioner argues that the issue in the instant case is whether respondent has specifically authorized its method of accounting under section 1.446–1(c)(2)(ii), Income Tax Regs. The above-cited regulation reads in pertinent part:

(ii) No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. The Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in the regulations in this part if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. *Further, the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method.* [Emphasis added.]

Neither the Code nor regulations establish procedures for obtaining authorization from the Commissioner to continue use of an accounting method. Judicial precedent makes clear that the Commissioner's failure to object, or the consistent use of an erroneous method of accounting by a taxpayer, does not constitute approval of the continued use of that erroneous method. *Connors, Inc. v. Commissioner, supra. Electric & Neon, Inc. v. Commissioner,* 56 T.C. 1324 (1971).

Petitioner argues that *Klein Chocolate Co. v. Commissioner,* 32 T.C. 437 (1959) and 36 T.C. 142 (1961), and *Geometric Stamping Co. v. Commissioner,* 26 T.C. 301 (1956), set forth the measure for determining if the Commissioner has authorized a particular method of accounting. These cases involved changes to specifically authorized methods of accounting. Neither party's briefs cite to us, nor have we been able to find, a case which directed itself to the Commissioner's exercise of his authority to allow a taxpayer to continue a method of accounting not specifically authorized by the Code or regulations. Therefore, we find the cases cited by petitioner not dispositive. The question before this Court is one of first impression.

Certainly, some positive act on the part of respondent is required for this Court to find that the Commissioner has exercised the authority granted him in section 1.446–1(c)(2)(ii),

Income Tax Regs. The fact that respondent's agent examined petitioner's income tax returns for tax years 1971 and 1972 without proposing any change in method is not, without more, such a positive act. This is true even if respondent's agent had been made aware of, or even approved, petitioner's erroneous method. *EZO Products Co. v. Commissioner*, 37 T.C. 385, 391 (1961).

In the case before us, respondent's agent had also examined petitioner's income tax returns for 1967, 1968, and 1969. In an examination report dated August 6, 1971, the agent proposed to change petitioner's method of accounting to the accrual method for all items of income and expenses. Upon subsequent administrative review at a higher level of the examining agent's report, respondent accepted the method of accounting utilized by petitioner in reporting its income and expenses (including salary and wages) on its income tax returns for 1967, 1968, and 1969. These actions border on being such a "positive act" on the part of respondent as to require us to find that respondent exercised his authority and approved petitioner's method of accounting. However the exhibits do not include the findings of the administrative review. Although the agent proposed a change in the entire accounting method as opposed to the treatment of the single item before the Court, it is not clear to what extent the accounting method was reviewed. Nor does the Court know the basis or rationale for the auditing agent's proposal to change accounting methods. Further, our decision in *Connors* was entered after the administrative review of petitioner's method of accounting. As noted earlier, *Connors* held that a method of accounting, almost identical to that utilized by petitioner in the instant case, was not authorized by the regulations. For these reasons, we are unable to find that respondent, at the time of the administrative review, intended to authorize a method of accounting which he knew was not specifically authorized by the regulations.

Having found that respondent did not authorize petitioner's method of accounting, this case is controlled by *Connors, Inc. v. Commissioner, supra.* Thus, petitioner, as a cash basis taxpayer, improperly deducted accrued salaries and bonuses.

*Decisions will be entered for the respondent.*