LAWRENCE A. GRAY AND ALBERTA J. GRAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gray v. Commissioner
Docket No. 31601-88
United States Tax Court
T.C. Memo 1990-283; 1990 Tax Ct. Memo LEXIS 303; 59 T.C.M. (CCH) 814; T.C.M. (RIA) 90283; June 7, 1990, Filed *303 Decision will be entered under Rule 155. Carl Barnhart and Joe K. Gordon, for the petitioners. Michael W. Bentley, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6654
6661
1984
$ 511,621
$ 125,786
$ 25,581
*
-
$ 127,905
Subsequently, by Amendment to Answer, respondent asserted an increased deficiency and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6654
6661
1984
$ 564,633
$ 139,039
$ 28,232
*
$ 34,833
$ 141,158
*305 Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by the parties, the issues for decision are whether (1) petitioners had unreported income of $ 80,000 in 1984; (2) petitioners are entitled to an investment tax credit in excess of the amount conceded by respondent; (3) petitioners erroneously overstated income in the amount of $ 7,600 in 1984; (4) petitioners are entitled to a cost of goods sold deduction in excess of the amount claimed on their 1984 income tax return; and (5) petitioners are liable for the additions to tax under sections 6651, 6653(a), and 6661. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners resided in Saginaw, Texas, at the time the petition in *306 this case was filed. During 1984, petitioners owned and operated Larry's Overhead Doors, the principal activities of which were the sale, installation, and repair of garage doors and garage door openers. At the same time, petitioners owned Gray's Service Center, which had as its principal activities motor vehicle repairs and the sale of motor vehicle fuel. Both of these businesses were operated as sole proprietorships, and income and expenses relating to them were reported on Schedules C attached to petitioners' 1984 Federal income tax return. During the period August 1, 1984 through December 31, 1984, petitioners were the sole shareholders of a corporation known as Big State Door Co., Inc.
Petitioners' income tax return for the year in issue was prepared by Clem Bailey (Bailey). Petitioners had a prior dealing with Bailey in which he misrepresented his fee. Petitioners were to be charged $ 1,500 for Bailey's services in assisting in the incorporation of one of petitioners' businesses, Concrete Cutters, Inc., but instead were charged $ 15,000. To cure the fee dispute, after petitioners' complaints, Bailey offered to perform 2 years of bookkeeping services for petitioners *307 at no charge. OPINION The burden of proof in this case is upon petitioners except for the unreported income that respondent asserted in his Amendment to Answer. Rule 142(a). Unreported Income
Petitioners have stipulated that there is an $ 80,000 discrepancy between petitioners' Schedule C reported gross receipts and the amount reflected on their books. Petitioners have further stipulated that their business records and bank deposits reflect $ 80,000 more of gross receipts than reported on their income tax return. Those facts established a prima facie case for respondent. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners argue that the $ 80,000 did not represent income. Rather, petitioners contend that that amount represented accounts receivable that were assigned to Big State Door Company in an arm's-length transaction in exchange for a release of liability from damages or warranty for which Larry's Overhead Doors would have been liable. Petitioners submitted an unsigned document purporting to represent the assignment of the $ 80,000. Bailey testified that he prepared the assignment and that the copy of the assignment submitted to *308 the Court came from his business records. Bailey further testified that he explained the necessity of the assignment before presenting it to petitioner Lawrence A. Gray (Mr. Gray) for signature and that the transaction was necessary to effectuate petitioners' business needs as follows: Q Was a memorandum prepared, to your knowledge, concerning this transfer of $ 80,000 from the individuals over to the corporation? A Well, I wouldn't have called it a memorandum. It was actually an assignment. * * * * * * So we met with the Grays and an assignment of $ 80,000 worth of invoices was drawn up to Big State Door Company in exchange for Big State Door Company's agreement to take over the warranty and liabilities of $ 80,000 worth of those jobs, and to use the same as payment for that and also to give them enough money to pay 160-something thousand dollars worth of inventory purchased by Larry and Alberta Gray to be used by Big State Door Company.
Petitioner Alberta J. Gray testified that she did not know the details of or understand the purported assignment. Mr. Gray testified as follows: Q Was that transaction substantiated by any sort of writing whatsoever? A Yes. *309 Mr. Bailey and Mr. Wendell came to my office upon discussing this. And they brought a document over explaining away the $ 80,000, and I signed the piece of paper, document, or whatever you want to call it. And I signed this at that time, after Mr. Bailey explained to me what was going to be done.
The date on which the alleged assignment occurred was not established. If it occurred, it was apparently after the receipts covered by the assignment had been deposited in petitioners' bank account. This testimony does not persuade us that the assignment occurred or that it had the purpose or effect claimed by petitioners. The unsigned copy was not received in evidence, in part because it had not been provided to respondent's counsel prior to trial in accordance with the Court's standing pretrial order. Petitioners presented no evidence concerning actual liabilities incurred in their door business. Petitioners cite sections 351 and 357 and argue that the assignment of $ 80,000 to their corporation was not a taxable event. Those sections are inapposite. Petitioners do not claim that they exchanged property for stock or securities of a corporation. Petitioners purportedly *310 exchanged accounts receivable for a discharge from a contingent liability. In any event, the income determined by respondent resulted from collection of customer accounts, not from petitioner's transaction with their corporation. Petitioners next argue that the $ 80,000 transfer represented an insurance premium for warranty coverage. Petitioners assert that warranty coverage is similar to casualty insurance and accordingly they are entitled to a deduction under section 162(a). This argument is spurious. There is no evidence or reason to believe that $ 80,000 represents a reasonable amount of consideration for the alleged release of liability. Further, petitioners' reliance on section 1.162-1(a), Income Tax Regs., and Biggs v. Commissioner, T.C. Memo. 1968-240, is misplaced. Those authorities state the general rule that a taxpayer is entitled to a deduction for ordinary and necessary business expenses, including insurance premiums, directly connected with or pertaining to the taxpayer's trade or business. In order for payments to be deductible as insurance premiums under section 162, however, the taxpayer must show that the amounts were paid for insurance. "A *311 taxpayer cannot deduct as insurance premiums amounts set aside in its own possession to compensate itself for perils which are generally the subject of insurance." Clougherty Packing Co. v. Commissioner, 84 T.C. 948, 957-958 (1985), affd. 811 F.2d 1297 (9th Cir. 1987).The amounts petitioners purportedly set aside with Big State Door Company, their wholly owned corporation, do not qualify as insurance premiums. We have considered petitioners' other arguments. They are similarly unsupported by the evidence and totally without merit. We conclude that the $ 80,000 in bank deposits represents unreported income to petitioners and that the purported assignment was an invalid attempt to shift previously earned taxable income from petitioners to their corporation. Investment Tax Credit
Neither petitioner testified as having any knowledge of the amount or validity of their claimed investment tax credit. Petitioners rely on their income tax returns for 1977 through 1984 and on Bailey's testimony to substantiate their claimed investment tax credit. Bailey testified that he computed petitioners' investment tax credit by reviewing copies of petitioners' *312 income tax returns for 1977 through 1984. He concluded that, based on that data, petitioners were properly entitled to an investment tax credit of $ 3,607. Petitioners submitted to the Court at trial unsigned copies of Forms 1040 with instances of typewritten numbers crossed out and new numbers written in. Bailey's testimony was unreliable standing alone, and the unsigned copies do not sufficiently corroborate the claimed credit carryforward. There is no evidence that petitioners acquired property eligible for the credit or that they used the correct amounts of basis in calculating the claimed credits. Petitioners have not sustained their burden of proof with respect to this issue. New Issues
At trial of this case, petitioners raised two issues that were tried by consent pursuant to Rule 41(b)(1). Those issues entail claims by petitioners that, due to errors made by their income tax preparer, (1) their income for the year in issue was overstated by $ 7,600 and (2) they are entitled to an additional cost of goods sold deduction in the amount of $ 18,000. Bailey testified that an employee of his erred in preparing the work sheets for petitioners' income tax return. As *313 a result, petitioners claim that they overstated their income by $ 7,600, which was reported as income but purportedly represented bonuses that petitioners paid to employees. Further, Bailey testified that, in reviewing petitioners' work sheets, he discovered $ 18,000 of expenses paid out of petitioners' personal funds that were properly chargeable to the business as cost of goods sold. Alternately, petitioners contend that they loaned $ 20,000 to Big State Door Company and that that substantiates their claimed $ 18,000 deduction. Petitioners provided no canceled checks, invoices, or other reliable evidence identifying the specific expenses incurred. On this record, we cannot rely on uncorroborated testimony. They have not sustained their burden of proof with respect to the above issues. Additions to Tax
Failure to File Timely Returns
Petitioners stipulated that their 1984 Federal income tax return was filed after the due date and without extension. They presented no other evidence on this issue. The section 6651(a)(1) addition to tax is sustained. Negligence
Section 6653(a)(1), for the year in issue, provides for an addition to tax equal to 5 percent of *314 the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. For the purposes of section 6653(a), negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Generally, the addition to tax for negligence is not imposed where a taxpayer's deductions are taken in good faith and based on advice of a competent tax expert. Otis v. Commissioner, 73 T.C. 671, 675 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). Petitioners argue that they were not negligent because they relied on the advice and expertise of their income tax return preparer. Both petitioners and their income tax preparer testified at trial. Their collective testimony and petitioners' concessions reveal instances of improper business deductions for amounts representing personal expenditures, as well as a patently *315 invalid attempt to assign income. We are not persuaded that Bailey was competent. In view of their prior experience with him, petitioners could not reasonably have relied on him. Moreover, they were aware of the facts showing that the claimed deductions were improper. The additions to tax under sections 6653(a)(1) and (a)(2) are sustained. Substantial Understatement
Section 6661, for the year in issue, provides an addition to tax equal to 25 percent of an underpayment of tax attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988).An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners presented no evidence or argument relating to any exception to liability under section 6661. Accordingly, assuming the recomputed deficiency exceeds the statutory amounts, petitioners are liable for the section 6661 addition to tax. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on $ 511,621.↩
*. 50 percent of the interest due on $ 564,633.↩